USDC-BALTIMORE
'22 JUN 2 AM 9:42

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| ETHAN NEWBERG | * | |
| 8745 Mary Lane | | |
| Jessup, Maryland 20794 | * | |
| | | |
| **Plaintiff** | * | |
| v. | | |
| | * | |
| MICHAEL HARRISON | | |
| Commissioner, Baltimore City | * | Civil Action No. 1:22-cv-_1332-ADC_ |
| Police Department | | |
| 601 E. Fayette Street | * | |
| Baltimore, Maryland 21202 | | |
| | * | |
| And | | |
| | * | |
| DEREK COLLINS | | |
| Officer | * | |
| Baltimore Police Department | | |
| 601 E. Fayette Street | * | |
| Baltimore, Maryland 21202 | | |
| | * | |
| And | | |
| | * | |
| JOSEPH POREMSKI | | |
| Officer | * | |
| Baltimore Police Department | * | |
| 601 E. Fayette Street | | |
| Baltimore, Maryland 21202 | * | |
| | | |
| And | * | |
| | | |
| ANTHONY FAULK | * | |
| Sergeant | | |
| Baltimore Police Department | * | |
| 601 E. Fayette Street | | |
| Baltimore, Maryland 21202 | * | |
| | | |
| **Defendants** | * | |

1

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, Ethan Newberg, *pro se*, and files suit against defendants, Commissioner Michael Harrison ("Harrison"), Officer Derek Collins ("Collins"), Officer Joseph Poremski ("Poremski") and Sergeant Anthony Faulk ("Faulk"), for money damages and for reasons state the following:

## PARTIES AND JURISDICTION

1. At all times relevant herein, Plaintiff was a highly decorated, extremely hardworking, and respected police officer for the Baltimore City Police Department ("BPD").

2. At all times relevant herein, defendant Harrison was the Police Commissioner of the BPD and was a duly authorized agent, servant, and/or employee of the BPD, was working and on duty, and was acting within the scope and course of his employment as the commissioner of the BPD. He is sued in his individual and official capacities.

3. At all times relevant herein, Collins and Poremski were BPD officers and were duly authorized agents, servants, and/or employees of the BPD, and were working, on duty, and acting within the scope and course of their employment as members of the BPD. They are sued in their individual and official capacities.

4. At all times relevant herein, Faulk was a BPD sergeant, and was a duly authorized agent, servant, and/or employee of the BPD, was working and on duty, and

was acting within the scope and course of his employment as a sergeant of the BPD. He is sued in his individual and official capacities.

5. Defendants were on actual notice pursuant to the Annotated Code of Maryland, Courts & Judicial Proceedings Article, Section 5-304, of the facts giving rise to this Complaint and, indeed, Defendant Harrison published it in a press conference both the public and internally to the entire BPD force.

## FACTS COMMON TO ALL COUNTS

6. Plaintiff, Ethan Newberg, hereby incorporates and re-alleges the prior paragraphs as if fully set forth in its entirety.

7. Plaintiff was hired by BPD on June 26, 1995 as a police officer trainee and at the time of Harrison's press conference had 25 years of experience.

8. In his 25 years of experience, Plaintiff had an exemplary record with no suspensions, sustained charges, disciplinary issues or any disciplinary actions taken against him by the BPD in his entire career.

9. Plaintiff further was one of the hardest working police officers in the entire BPD. Indeed, he was the second highest City employee and highest paid police officer because of all the overtime he worked.

10. Plaintiff was the supervisor for sector 3, which is a highly violent district in the city.

11. In the beginning of May 2019, Plaintiff was on routine patrol when he encountered an individual who had been observed earlier loitering by the alley in the 2300 block Ashton St.

12. Plaintiff approached the individual with one of his officers. A check revealed a possible warrant for his arrest. While Plaintiff's officer was attempting to verify the warrant, an individual, Lee Dotson, walked by and began to curse at Plaintiff and hinder his investigation with the first stopped individual.

13. As Dotson began to yell and curse louder, Plaintiff approached him. Plaintiff make slight contact with Dotson's elbow to get his attention. Dotson then clenched and cocked his fist in a combative stance, at which point Plaintiff took a step back from Dotson in an attempt to diffuse the situation.

14. Alex Young, the other officer with Plaintiff observed Dotson's aggressive stance and that Dotson appeared to be about to strike Plaintiff, and fearing for Plaintiff's safety, tackled Dotson, who began to yell.

15. After Dotson was detained, a large amount of cocaine was discovered on his person and he was charged accordingly.

16. Plaintiff was advised shortly after this incident that the commissioner, Defendant Harrison, did not like how much money Plaintiff was making in overtime.

17. Shortly thereafter, Plaintiff then was advised that he was under investigation for the above-described arrest.

18. Plaintiff heard nothing more about it, but was then inexplicably reassigned temporarily to central records. At this juncture, Plaintiff had not been suspended.

19. On or around June 7, 2019 Plaintiff was contacted by Captain Edwards from the southwest district advising that he was on his way to pick Plaintiff up. Captain Edwards told Plaintiff to leave his dinner and personal effects at his desk, and that Capt. Edwards was taking Plaintiff to internal affairs, but he would bring him right back.

20. Capt. Edwards and Plaintiff arrived at Internal Affairs at Kirk Avenue. Edwards told Plaintiff he would wait for him.

21. Plaintiff went to the second floor, where he was led into a room. Two detectives, Defendants Collins and Poremski, were positioned outside the room where Plaintiff was taken. Poremski and Collins were on other side of door preventing Plaintiff from leaving. Poremski was seated in a chair. Defendants Collins and Poremski clearly were there to guard Plaintiff and prevent him from leaving.

22. Plaintiff asked Poremski if he were under arrest, at which point he shrugged. Defendant Collins then intercepted Plaintiff and blocked his path so that he could not leave. He then asked, "where are you going, Sarge?"

23. Plaintiff responded that if he were not under arrest that he was leaving. Collins responded "you're not free to leave." He then confirmed that a warrant had not yet been signed but that he was "waiting for a phone call" purportedly by Sgt. Faulk to let him know when the warrant was signed by the Court Commissioner.

24. An hour went by, Plaintiff got up and walked out the door. The detective then suddenly jumped up and asked Plaintiff where he was going.

25. Plaintiff then told the detective that unless they were arresting him, he was leaving. Then The detective advised that I was not free to go. Plaintiff responded that unless he was being arrested or there was a warrant for his arrest then legally he was free to leave.

26. Plaintiff was then advised, again, that he was not free to leave, that a warrant had not yet been obtained, that investigators were at the court commissioner

5

trying to get warrant signed, and that Plaintiff could not leave until he got the call from his supervisor who was at the court commissioner's office that they had a warrant signed.

27. Plaintiff was then placed back in the room for an additional hour and a half, when he was advised that they had gotten warrant signed.

28. When the warrant allegedly was issued and signed, the warrant was not shown to Plaintiff. After more than two hours, Plaintiff was arrested. The arresting officers, Defendants Collins and Poremski, did not wear body cameras when they made arrest.

29. At all times relevant hereto, Collins and Poremski were acting under orders from Defendant Faulk.

30. Plaintiff was taken from Internal Affairs to Central Booking at around 8pm.

31. Plaintiff was illegally detained for over 2 hours with no charges and no executed warrant.

32. While Plaintiff was being illegally detained, Defendant Commissioner Harrison had already had planned a press conference to announce Plaintiff's arrest before a warrant had been obtained.

33. Indeed, when Plaintiff was ultimately charged and still in central booking, the commissioner gave a press conference to numerous media outlets. He said disparaging things about Plaintiff's character, and basically painted Plaintiff as corrupt and guilty.

34. Ironically, Defendant Commissioner Harrison announced to the world that Plaintiff would be charged with false arrest and false imprisonment while at the same

6

time directing Officers Collins and Poremski to illegally detain him without being arrested and without first obtaining a warrant.

35. Plaintiff's family was exposed Defendant Harrison's words, which were not accurate and portrayed Plaintiff in a false light.

36. Indeed, a review of the body cam footage reveals Plaintiff approaching the man, Lee Dotson—who subsequently was found to have a large amount of cocaine on his person—and shows the other officer (not, Plaintiff) ran up and tackle Dotson. Indeed, the body cam footage shows that Plaintiff acted without aggression towards Dotson.

37. Prior to illegally detaining and then arresting Plaintiff, the BPD did not interview any witnesses or do any investigation whatsoever.

38. Defendant Harrison, however, did not stop there. After holding a press conference that vilified Plaintiff, he then released a video internally to the police department that further singled out Plaintiff and vilified him in front of and destroyed his reputation with his peers.

39. The video was published on the BPD's power DMS system, where police officers and civilians who work for the BPD are required to watch the video and sign off that they watched it.

40. In the video Defendant Harrison once again made false and salacious statements about Plaintiff. Indeed, even if Plaintiff is exonerated, Defendant Harrison through his false statements has created a hostile work environment for Plaintiff. Defendant Harrison has also further sabotaged Plaintiff's opportunities at future employment elsewhere.

41. Defendant Harrison's salacious and false words caused irreparable harm to Plaintiff and his family.

42. Defendant Harrison deliberately chose to deprive Plaintiff of the opportunity to have his case tried in court and chose to vilify Plaintiff for political gain and to divert the public for the drastic increase in crime and further deterioration of the BPD under Defendant Harrison's tenure.

43. After realizing that the case against Plaintiff was weak, at Defendant Harrison's direction, the BPD went on a fishing expedition and went through hundreds, more than a year's worth of body camera footage in search for additional cases against Plaintiff despite that no one had lodged any prior complaints against Plaintiff.

44. As a result of Defendant Harrison's personal vendetta and campaign to destroy Plaintiff, Plaintiff has been forced to undergo mental health treatment, has suffered severe depression, and has been prescribed a panoply of antidepressants.

45. Despite that other police officers have been charged, Defendant Harrison singled out Plaintiff was the only officer that was subjected to having thousands of hours of body cam footage reviewed in a fishing expedition looking for additional incriminating evidence.

46. Given that Plaintiff was a top earner in the police department to which Defendant Harrison took issue and was a motivating factor in Harrison's campaign against Plaintiff, Harrison had all of Plaintiff's overtime slips and schedule pulled and reviewed in an attempt to find malfeasance or theft. When no theft or malfeasance was discovered, Harrison then resorted to having thousands of hours of Plaintiff's body cam

footage reviewed in search for anything that potentially could incriminate Plaintiff, out of which only about six videos were pulled for further review.

47. Defendant Harrison has made it his mission to destroy Plaintiff by whatever means necessary and without regard to Plaintiff's rights.

## COUNT I
### (Placing a Person in a False Light)

48. Plaintiff, Ethan Newberg, hereby incorporates and re-alleges the prior paragraphs as if fully set forth in this Count II.

49. Defendants sought to embarrass and humiliate Plaintiff by publicizing facts that were unproven, were not accurate, did not occur were not depicted as alleged in the body cam footage.

50. Indeed, the body cam footage reveals that Plaintiff went up to Mr. Dotson after Mr. Dotson started yelling at Plaintiff, and that Plaintiff did not place a hand on or otherwise touch him. After Mr. Dotson made an aggressive move by cocking his fist as if to strike Plaintiff, the other officer with Plaintiff ran over and tackled Dotson to prevent injury to Plaintiff.

51. Mr. Dotson was then placed under arrest and searched, where a large amount of cocaine was found on his person.

52. In his description of the events that transpired on the body cam footage, Defendant Harrison described the events as if Plaintiff was the aggressor when that statement was false.

53. In his effort to smear Plaintiff and make an example of him, Defendant Harrison did not disclose to the public that a large amount of cocaine was found on Mr. Dotson.

54. Defendant Harrison improperly publicized facts about Plaintiff which placed Plaintiff in a false light by attributing to him conduct and characteristics which were false.

55. Defendant Harrison knew that the charges brought against Plaintiff were false, and Plaintiff is confident that he will be absolved of the charges.

56. Defendant Harrison, despite the false narrative, made an intentional disclosure to the public knowing of the falsity of the charges and/or with reckless disregard for the falsity in a manner that was highly offensive, and would be highly offensive to a reasonable person.

57. The disclosure portrayed and gave publicity to Plaintiff as a rogue police officer who did not respect the rights of the citizens of Baltimore City that was not true and placed Plaintiff before the public in a false light.

58. The false light in which Defendant Harrison placed Plaintiff was highly offensive and would be highly offensive to a reasonable person.

59. Defendant Harrison had knowledge of the unproven nature of the charges, that they were false, and acted with actual malice and/or a reckless disregard as to the falsity of the publicized charges, and the false light that Plaintiff would be place portraying him as a abusive police officer.

60. Plaintiff suffered mental pain and suffering, embarrassment, humiliation, a loss of opportunity and economic damages including being suspended, even though the charges against him were unproven.

WHEREFORE plaintiff, Ethan Newberg, demands judgment in excess of Seventy-Five Thousand Dollars ($75,000.00) in compensatory and punitive damages in

an amount to be determined by a jury, plus interest and costs, against Defendants for Invasion of Privacy – Placing a Person in a False Light.

## COUNT II
### (Interference with Economic Relationship)

61. Plaintiff, Ethan Newberg, hereby incorporates and re-alleges the prior paragraphs as if fully set forth in this Count II.

62. Plaintiff further alleges that Defendant Harrison engaged in a course of conduct to deliberately and purposefully interfere with and cause financial loss to Plaintiff's lawful business and economic rights without any justifiable cause or right.

63. Specifically, as described in the prior averments, Defendants willfully and intentionally denied and/or caused the denial of Plaintiff's ability to work overtime and created a controversy by portraying Plaintiff in a light that was false and was not depicting in the bod cam footage that was released and published with the express purpose to create a controversy as grounds to suspend Plaintiff, destroy his ability to earn overtime, and to intentionally cause financial harm and economic loss to Plaintiff.

64. Additionally, Defendant Harrison willfully and intentionally suspended Plaintiff with the intent of firing him with the express purpose to cause financial harm and economic loss to Plaintiff. Defendant Harrison knew that suspending Plaintiff in the above-described manner would deprive Plaintiff of his income and would place Plaintiff in a false light and cause problems with pursuing other law enforcement opportunities in the state of Maryland in the future due to COMAR regulations.

65. As a direct and proximate result of Defendants intentional acts as described in the prior averments, Plaintiff for the past three years has lost the opportunity to pursue overtime which was a substantial part of his income.

11

66. Defendant Harrison's actions were motivated by actual malice, ill will, hatred, and evil intentions with the express purpose to inflict harm on the Plaintiff.

## COUNT III
### (Malicious Prosecution)

67. Plaintiff, Ethan Newberg, hereby incorporates and re-alleges the prior paragraphs as if fully set forth in this Count III.

68. Defendant Harrison and Defendant BPD instituted and continued a criminal proceeding against Plaintiff.

69. Plaintiff anticipates that the proceeding will be terminated in Plaintiff's favor.[1]

70. There was no probable cause to institute the criminal proceeding. Indeed, the body cam footage that allegedly was the basis for the charges reveals that Plaintiff was not the aggressor against Mr. Dotson, and that the officer with Plaintiff tackled Mr. Dotson after Mr. Dotson cocked his fist and appeared to be about to strike Plaintiff.

71. Defendant Harrison instituted this proceeding with malice and for a purpose other than to bring Plaintiff to justice. Specifically, Defendant Harris instituted this proceeding to thwart Plaintiff from earning so much money, to make Defendant Harrison appear that he was cracking down on wrongdoing in the police department by contriving and fabricating wrongdoing by Plaintiff when none existed, and to distract the public from the skyrocketing crime under Defendant Harrison's tenure as commissioner.

WHEREFORE plaintiff, Ethan Newberg, demands judgment in excess of Seventy-Five Thousand Dollars ($75,000.00) in compensatory and punitive damages in an amount to be determined by a jury, plus interest and costs, against Defendants for Interference with Economic Relationships.

---

[1] Upon being vindicated, Count III will become ripe.

## COUNT IV
### (False Imprisonment)

72.     Plaintiff, Ethan Newberg, hereby incorporates and re-alleges the prior paragraphs as if fully set forth in this Count IV.

73.     On June 7, 2019, at the direction of Defendant Harrison and Defendant Faulk, Defendants Collins and Poremski brought Plaintiff to Internal Affairs and put him in a room.

74.     Plaintiff was told to wait. When Plaintiff asked if he was under arrest, he was told that he was not yet under arrest.

75.     When Plaintiff asked whether a warrant had been obtained for his arrest, Defendants Collins, Poremski and Faulk advised him that a warrant had not yet been obtained, but that they were waiting on a warrant being signed.

76.     When Plaintiff learned that he was not under arrest nor had a warrant been obtained, he attempted to leave, at which point Collins and Poremski forcibly blocked the door, told Plaintiff he could not leave, thereby physically and by threat restraining Plaintiff from leaving.

77.     Such action by Defendants Collins and Poremski caused Plaintiff to be unlawfully deprived of his liberty to leave.

78.     Plaintiff was detained against his will for at least two hours.

79.     As a result of the actions by Defendants Collins and Poremski Plaintiff suffered mental pain and anguish by being threatened and unlawfully held against his will for an extended period of time.

WHEREFORE plaintiff, Ethan Newberg, demands judgment in excess of Seventy-Five Thousand Dollars ($75,000.00) in compensatory and punitive damages in an amount to be determined by a jury, plus interest and costs, against Defendants.

## COUNT V
### (Violation of the Maryland Declaration of Rights)

80. Plaintiff, Ethan Newberg, hereby incorporates and re-alleges the prior paragraphs as if fully set forth in this Count V.

81. As a direct and proximate result of the actions and omissions of Defendants Harrison, Faulk, Collins and Poremski, described herein, all of which were committed under the color of their authority as members of the BPD and while acting in the capacity of duly authorized police officers, Plaintiff was further deprived of his rights and immunities secured to him under the Maryland Declaration of Rights – in particular, his right not to be subjected to being illegally detained and falsely imprisoned, and his right not be deprived of his liberty. That for the reasons discussed above, the Defendants have also violated the protections, privileges, and rights granted to Plaintiff under the laws of the State of Maryland, and under the United States Constitution, specifically the Fourth and Fourteenth Amendments.

WHEREFORE plaintiff, Ethan Newberg, demands judgment in excess of Seventy-Five Thousand Dollars ($75,000.00) in compensatory and punitive damages in an amount to be determined by a jury, plus interest and costs, against Defendants.

## COUNT VI
### (Deprivation Of Rights Under 42 U.S.C.A. § 1983 – Fourth And Fourteenth Amendment)

82. Plaintiff, Ethan Newberg, hereby incorporates and re-alleges the prior paragraphs as if fully set forth in this Count VI.

14

83. At all times relevant to this Complaint, Plaintiff had rights afforded to him by the Fourth and Fourteenth Amendments to the United States Constitution not to have his person or property unlawfully searched, seized, or detained in an unreasonable manner; not to be deprived of his liberty without due process of the law; and not to be summarily punished.

84. At all times relevant herein, Defendants were acting under the color of State and local law and as members of the BPD. Their conduct therefore triggers 42 U.S.C. §1983.

85. Defendants' actions and omissions deprived Plaintiff of his clearly established and well-settled constitutional rights.

86. Defendants knowingly acted to deprive the Plaintiff of his constitutional rights.

87. The actions of Defendants deprived Plaintiff of rights and privileges secured and protected by the United States Constitution, specifically the Fourth Amendment right to be free from unreasonable searches and seizures, freedom from a deprivation of life and liberty without due process of law, and freedom from summary punishment.

88. Plaintiff claims damages for the injuries set forth above under 42 U.S.C. § 1983 against Defendants for violation of Decedent McCain's constitutional rights under color of law.

WHEREFORE plaintiff, Ethan Newberg, demands judgment in excess of Seventy-Five Thousand Dollars ($75,000.00) in compensatory and punitive damages in an amount to be determined by a jury, plus interest and costs, against Defendants.

Respectfully submitted,

_____
Ethan Newberg
8745 Mary Lane
Jessup, MD  20794
newbergsky@aol.com
(443) 271-8164

*Proceeding Pro Se*

## REQUEST FOR JURY TRIAL

Plaintiff, Ethan Newberg, respectfully requests a Jury Trial on all counts in this Complaint.

_____
Ethan Newberg